UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVSION

| | |
|---|---|
| **J.P.,** a minor by and through his parents and next friends, **CRYSTAL P.** and **DANIEL P.**, et al.,<br><br>*Plaintiffs,*<br><br>vs.<br><br>**THE UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT ("UCISD")**, et al.,<br><br>*Defendants.* | **Civil Action No.: 2:23-cv-00015-AM** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT RUBEN NOLASCO'S
MOTION TO DISMISS**

**TO HONORABLE JUDGE ALIA MOSES**

COMES NOW, PLAINTIFFS' J.P., a Minor, et al., file this brief in opposition to the motion to dismiss Plaintiffs' Amended Complaint filed by Defendant Uvalde County Sheriff Ruben Nolasco. The Court should deny that motion for the reasons set forth below.

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ................................................................................................................................ 1

    I.    STANDARD OF REVIEW ............................................................................................ 1

    II.    ESTHER V AND ALBERT V. HAVE STANDING ................................................... 2

    III.    PLAINTIFFS HAVE STATED CLAIMS UNDER THE STATE-CREATED DANGER THEORY OF LIABILITY (DUE PROCESS) ............................................ 3

        a.    The Fifth Circuit Has Repeatedly "Recognized" the State-Created Danger Theory and Defined It with Particularity .................................................. 3

        b.    Ten Circuits Have Expressly Adopted the State-Created Danger Theory. ........... 6

    IV.    THIS CASE DEMANDS RECOGNITION OF THE STATE-CREATED DANGER ............................................................................................................................ 7

    V.    DEFENDAT SHERIFF NOLASCO CANNOT HIDE BEHIND QUALIFIED IMMUNITY ................................................................................................................. 10

CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Adickes v. S. H. Kress & Co.,* 398 U.S. 144, (1970) ......................................................................... 11

*Ashcroft v. al-Kidd*, 563 U.S. 731, (2011) ........................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662, (2009) ............................................................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007) ............................................................................ 1

*Breen v. Tex. A&M Univ.*, 494 F.3d 516, (5th Cir. 2007) ................................................................. 5

*Breen v. Texas A&M Univ.*, 485 F.3d 325, (5th Cir. 2007) ............................................................... 5

*Butera v. District of Columbia*, 235 F.3d 637, (D.C. Cir. 2001) ...................................................... 6

*DeShaney v Winnebago County Department Social Services*, 489 U.S. 189, (1989) ..................... 4

*DeShaney. Irish v. Fowler*, 979 F.3d 65, (1st Cir. 2020) .................................................................. 6

*Dixon v. Alcorn County Sch. Dist.*, 499 Fed. App'x 364, (5th Cir. 2012) ........................................ 5

*Doe v. Covington County Sch. Dist.,* 675 F.3d 849, (5th Cir. 2012) ............................................ 5, 8

*Doe v. Rosa*, 795 F.3d 429, (4th Cir. 2015) ...................................................................................... 6

*Est. Of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, (5th Cir. 2017) ............................... 5, 8

*Glasgow v. State of Nebraska*, 819 F.3d 436, (8th Cir. 2016) .......................................................... 6

*Hague v. Comm. for Indus. Org.*, 307 U.S. 496, (1939) .................................................................. 11

*Hope v. Pelzer*, 536 U.S. 730, (2002) ............................................................................................... 6

*Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, (7th Cir. 2011) ......................................... 6

*Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir. 1994) ......................... 4, 7, 9

*Kallstrom v. City of Columbus*, 136 F.3d 1055, (6th Cir. 1998) ...................................................... 6

*Kemp v. City of Houston,* No. CIV.A. H-10-3111, 2013 WL 4459049,
   (S.D. Tex. Aug. 16, 2013) ........................................................................................................... 7

*Kneipp v. Tedder*, 95 F.3d 1199, (3d Cir. 1996) ............................................................................... 6

*Leffall v. Dallas Independent School District*, 28 F.3d 521 (5th Cir. 1994) ................................... 4

*Logan v. Hollier*, 711 F.2d 690, (5th Cir. 1983) .............................................................................. 3

*Matthews v. Bergdorf*, 889 F.3d 1136, (10th Cir. 2018) .................................................................. 6

*Morgan v. Swanson*, 659 F.3d 359, (5th Cir. 2011) ............................................................... 3, 6, 11

*Okin v. Vill. of Cornwall-On-Hudson P.D.*, 577 F.3d 415, (2d Cir. 2009) ....................................... 6

*Rios v. City of Del Rio, Tex.*, 444 F.3d 417, (5th Cir. 2006) ............................................................. 5

*Rogers v. Jarrett*, 63 F.4th 971, (5th Cir. 2023) ............................................................................. 10

*Scanlan v. Texas A&M University*, 343 F.3d 533 (5th Cir. 2003) .................................................... 5

*Schydlower v. Pan Am. Life Ins. Co.*, 231 F.R.D. 493, (W.D. Tex. 2005) ................................... 2

*Scott v. Harris*, 550 U.S. 372, (2007) .............................................................................................11

*Stanley v. Illinois*, 405 U.S. 645, (1972) ........................................................................................ 3

*Stephan v. United States*, 319 U.S. 423, (1943) ............................................................................11

*United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc.*,
   508 U.S. 439, (1993) ................................................................................................................ 10

*United States v. Welden*, 377 U.S. 95, (1964) ...............................................................................11

*Wood v. Ostrander*, 879 F.2d 583, (9th Cir. 1989) ........................................................................ 6

*Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000) ............................................... 3

*Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, (5th Cir. 2016) ........................................ 2

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ............................................................................... 3

**Statutes**

1871 Civil Rights Act ..................................................................................................................10, 11

42 U.S.C. § 1983 ........................................................................................................................ 6, 10

Fed. R. Civ. P. 8(a) ......................................................................................................................... 1

**INTRODUCTION**

Regrettably, this court must preside over yet another recurring and deeply tragic occurrence where once again, elementary age children and their dedicated teachers had been murdered and emotionally maimed by a deeply troubled young man wielding a semi-automatic machine gun who, in his delusion colored by glorification of violence perpetuated by both video games and targeted gun manufacturer advertisements, mercilessly released his own childhood trauma and pain upon unsuspecting beautiful and buoyant young children and teachers at school.

On account of abject failure by Defendant Sheriff Nolasco and the other named law enforcement officers and agencies, Plaintiffs and the putative Class members will now be forced to endure the indelible and forever-lasting trauma that Defendants immeasurably caused and amplified on account of their contemptible and flagrant affirmative conduct in failing to undertake prescribed courses of action. Defendant Sheriff Nolasco now attempts to shield himself from liability for his affirmative actions that greatly increased the shooter, Salvador Ramos' ability to terrorize, injure and kill, the students, teachers, and staff members of Robb Elementary School.

**ARGUMENT**

I.  **STANDARD OF REVIEW**

Plaintiffs need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). To defeat a Rule 12(b)(6) Motion,[3] the complaint need only include sufficient factual allegations "to raise a right to relief above the speculative level" and to provide "fair notice" of the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In considering a Rule 12(b)(6) motion, the Court must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious*

1

*Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them . . . and must review those facts in a light most favorable to the plaintiff." *Schydlower v. Pan Am. Life Ins. Co.*, 231 F.R.D. 493, 498 (W.D. Tex. 2005). Plaintiffs have met their low burden at the pleading stage.

## II.  ESTHER V AND ALBERT V. HAVE STANDING

Defendant Sheriff Nolasco argues that Esther V. does not have standing because Esther V is a parent. However, Esther V was in attendance at Robb Elementary on May 24, 2022, serving as a teacher's assistant in Rooms 31 and 32. (Doc 15 Amended Complain ¶ 9.) She has standing because she was directly impacted by Defendant's failure to act, which allowed Salvador Ramos to kill and injure Robb Elementary School students.

Esther V. ("Ms. Esther V.") also heard the rattle of Ramos's gunshot from her special education classroom, Rooms 31-32. (Doc 15 Amended Complain ¶ 87.) After hearing the gunshots, Ms. Esther V., a full-time UCISD special education teacher with students ranging from $2_{nd}$ through $4_{th}$ grade, proceeded to the window and saw students and teachers scattering in all directions. *Id.* Ms. Esther V. promptly locked the classroom's doors and shuttled her emotionally and physically disabled students into a closet within the classroom. *Id.* After everyone was accounted for, there were approximately thirteen students and teachers barricaded within the closet. *Id.* Some of her special needs students understood what was happening and expressed their fear and confusion. *Id.* Ms. Esther V. texted her nine-year-old child's teacher to apprise her of the shooter and to determine if her child was safe and under her supervision. *Id.* Ms. Esther V. received a text back from her child's teacher informing that she was not with the class as they were in the cafeteria having lunch. *Id.* Further, the complaint alleges

2

that Esther V. was trapped in the school and individuals who would have rescued her were denied access by Defendant Nolasco. (Doc 15 Amended Complain ¶ 122.) These facts establish that Esther V. was not simply a parent. Accordingly, Defendant Nolasco's argument fails.

Similarly, Albert V. was on Geraldine Street on May 24, 2022 helping a friend with his vehicle. (Doc 15 Amended Complain ¶ 38.) He heard the gunman crash his vehicle and ran over to ask if he needed help. Albert V states that the gunman got out of his vehicle, saw him drop a second AR rifle to the side of his pick-up truck, and started shooting towards Plaintiff. *Id.*

Lastly, it is well established that substantive due process protects the right to familial relations between family members. *See*, e.g., *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment ...."); *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (substantive due process violations are actionable under § 1983). This right is held by both the child and the parents. *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000); *Logan v. Hollier*, 711 F.2d 690, 691 (5th Cir. 1983)("courts have long recognized that the Constitution protects the family and basic familial relationships and practices").

Accordingly, Defendant's standing argument is patently unavailing.

### III. PLAINTIFFS HAVE STATED CLAIMS UNDER THE STATE-CREATED DANGER THEORY OF LIABILITY (DUE PROCESS)

#### a. The Fifth Circuit Has Repeatedly "Recognized" the State-Created Danger Theory and Defined It with Particularity.

First, there is plenty of "controlling authority" in the Fifth Circuit that, while not expressly adopting the state-created danger theory, "defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011).

3

The state-created danger theory stems from the Supreme Court's decision in *DeShaney v Winnebago County Department Social Services*, 489 U.S. 189, 201 (1989), in which the court indicated that Section 1983 liability for private-actor conduct arises if the state played any part in creating the danger the victim faced. *Id.* at 201 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.") (emphasis added). Since at least 1994, the Fifth Circuit has repeatedly recognized and discussed in great detail the "contours" of the theory. In *Leffall v. Dallas Independent School District*, 28 F.3d 521 (5th Cir. 1994), the parent of a student sued a school district under § 1983 after the student was killed by random gunfire in the school's parking lot. The court discussed the theory in detail, including the level of "culpability" required to state such a claim, and noted in doing so that the court "may assume without deciding that our court would recognize the state-created danger theory." *Id.* at 530. Ultimately, the Court found the particular allegations in that case insufficient to state a claim. *Id.* at 532.

Three months after *Leffall*, the Fifth Circuit again set out the theory in even greater detail in *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir. 1994). Its discussion clearly defined the "contours" of the theory:

> When state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state "custody." This principle has been applied in a number of cases from other circuits.
> . . .
> The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. Thus, the environment created by the state actors must be dangerous; they must know it is dangerous; and, to be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. Put otherwise, the defendants must have been at least deliberately indifferent to the plight of the plaintiff.

*Id*. at 200–01 (cleaned up). Again, the Fifth Circuit acknowledged the theory, concluding only that the pleadings in that case were insufficient to state a claim. *Id*. at 201.

Two years later, the Fifth Circuit again recognized the theory, concluding in *Scanlan v. Texas A&M University*, 343 F.3d 533 (5th Cir. 2003) that "the district court should have concluded that the plaintiffs stated a section 1983 claim under the state-created danger theory." Id. at 538. In a subsequent case, the Fifth Circuit went on to note that *Scanlan* "clearly implied recognition of state created danger as a valid legal theory," but later withdrew that portion of the opinion on rehearing. *Breen v. Texas A&M Univ*., 485 F.3d 325, 336 (5th Cir. 2007); *Breen v. Tex. A&M Univ*., 494 F.3d 516, 518 (5th Cir. 2007).

The Fifth Circuit has since clarified that *Scanlan* did not officially adopt the theory. *See, e.g., Rios v. City of Del Rio, Tex*., 444 F.3d 417, 422–23 (5th Cir. 2006). But in subsequent cases, the Fifth Circuit has only held that the pleadings did not adequately satisfy the theory. *See Doe v. Covington County Sch. Dist.,* 675 F.3d 849, 865–66 (5th Cir. 2012) ("Although we have not recognized the [state-created danger] theory, we have stated the elements that such a cause of action would require. . . . even if we were to embrace the state-created danger theory, the claim would necessarily fail [due to insufficient allegations]."); *Dixon v. Alcorn County Sch. Dist*., 499 Fed. App'x 364, 368 (5th Cir. 2012) ("There is therefore no need to determine whether this Court should adopt the state-created danger theory of liability on the present facts."); *Est. Of Lance v. Lewisville Indep. Sch. Dist*., 743 F.3d 982, 1003 (5th Cir. 2017) ("[T]his case does not sustain a state-created danger claim, even assuming that theory's validity").

The state-created danger theory of liability was implied by the Supreme Court in 1989; as explained below, it was adopted and defined in no fewer than ten circuits; and it remains unquestioned (though never expressly adopted) by the Fifth Circuit. It is clearly established.

5

### b. Ten Circuits Have Expressly Adopted the State-Created Danger Theory.

Second, ten courts of appeals have adopted the state-created danger theory stemming from *DeShaney*. *Irish v. Fowler*, 979 F.3d 65, 67, 74-75, 77 (1st Cir. 2020) (the state-created danger "theory of substantive due process liability is viable" and clearly-established); *Okin v. Vill. of Cornwall-On-Hudson P.D.*, 577 F.3d 415, 434 (2d Cir. 2009) (state-created danger theory a clearly established right); *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996) ("[T]he state-created danger theory is a viable mechanism for establishing constitutional violation under 42 U.S.C. § 1983."); *Doe v. Rosa*, 795 F.3d 429, 438–39 (4th Cir. 2015) (recognizing state-created danger theory); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066–67 (6th Cir. 1998) (plaintiffs stated viable claims under state-created danger theory); *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (recognizing state-created danger theory); *Glasgow v. State of Nebraska*, 819 F.3d 436, 442 (8th Cir. 2016) (same); *Wood v. Ostrander*, 879 F.2d 583, 589–96 (9th Cir. 1989) (concluding plaintiff stated a valid claim under state-created danger theory); *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018) (recognizing state-created danger theory); *Butera v. District of Columbia*, 235 F.3d 637, 652 (D.C. Cir. 2001) ("[T]he State also owes a duty of protection when its agents create or increase the danger to an individual.").

Ten different circuits adopting the state-created danger theory—with no circuit rejecting it— is plainly a "robust consensus of persuasive authority." *Morgan*, 659 F.3d at 382. Whether or not the Fifth Circuit had expressly adopted the state-created danger theory, the robust consensus of ten circuits certainly put the Uvalde County Defendants "on notice [their] conduct [was] unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). They cannot credibly argue that their actions were "reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)., when ten circuits have adopted the state-created danger theory. Their deliberate decision to trap children in a classroom with a killer for 77 minutes while preventing

6

others from mounting a rescue is the height of "plainly incompetent" conduct that qualified immunity does not protect. Id

### IV. THIS CASE DEMANDS RECOGNITION OF THE STATE-CREATED DANGER

Because the Fifth Circuit has not expressly rejected the theory, but rather has laid out the theory's elements, Plaintiffs should be allowed to develop evidence as to a state-created danger claim in discovery and at trial. See *Kemp v. City of Houston,* No. CIV.A. H-10-3111, 2013 WL 4459049, at *6 (S.D. Tex. Aug. 16, 2013) (allowing state-created danger claim to proceed to trial because "[w]hether the evidence at trial rises to a level sufficient to submit this claim to the jury, particularly since the Fifth Circuit has not yet adopted the theory, remains to be seen."). In recognizing the state-created danger theory, the Fifth Circuit has explained: "When state actors knowingly place a person in danger, the due process clause of the constitution has been held to render them accountable for the foreseeable injuries that result from their conduct, whether or not the victim was in formal state 'custody.'" *Johnson*, 38 F.3d at 200. It is telling that the Sheriff Nolasco does not even attempt to engage with the state-created danger theory on its merits—if ever a set of facts justified the express adoption of this theory of liability, this case would manifestly qualify.

Prior Fifth Circuit cases declining to apply the state-created danger theory on particular facts have lacked a key requirement: that the state actor actually knew or had reason to know that the private bad actor was likely to commit misconduct as a result of the state actor's conduct, evidenced by the state actor impeding others from preventing the bad actor's misconduct. "The key to the state-created danger cases . . . lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id*. at 201 (cleaned up)

(emphasis added). The Fifth Circuit's analyses on the merits of the theory have typically stopped there, as it is understandably rare for a plaintiff to be able to plead facts reflecting that culpable knowledge and conduct. See, e.g., *Covington*, 675 F.3d at 866; *Lance*, 743 F.3d at 1001–02.

Here, the Amended complaints alleges the following:

- Uvalde Sheriff Nolasco responded to Ramos's grandmother's house and was informed that her grandson, Salvador Ramos had shot her and told Defendant Nolasco his name. Defendant Nolasco did not share this information with other law enforcement officers responding to the shooting at Robb, even as they asked for that information. (Doc 15 Amended Complain ¶ 93.)

- Uvalde Sheriff deputies who were told by Sheriff Nolasco that "DPS is coming. I got the captain. We need to, we need to get this contained and see who's in charge." Despite Nolasco's order, it should have been apparent to him that "containment" was an inappropriate response to an active shooter. (Doc 15 Amended Complain ¶ 117.)

- Nolasco's response was informed on account that he had not completed a state active shooter training nor did the Uvalde's Sheriff Department under his command have an active shooter policy in place on May 24, 2022. (Doc 15 Amended Complain ¶ 118.)

- At the perimeter of the school's campus, many parents had assembled seeking to retrieve their children. They were vehemently denied entry onto the campus by law enforcement despite having received no affirmative communication apprising them of the state of law enforcement's response to neutralizing the active shooter. Approximately twenty or so minutes after Ramos had entered the building, a group of terrified parents pleaded with law enforcement to permit their entry which was forcefully rebuffed. The student's parents were forcefully held back, pinned to the ground, pepper sprayed and tasered. One parent

- however was able to break through the grip of law enforcement who were preventing her entry. She ran into the building and rescued her two children. Among law enforcement officers at the perimeter was Defendant Nolasco who kept parents from entering the school, even as parents yelled at him to do something, anything, to rescue their children. (Doc 15 Amended Complain ¶ 122.)

- On account of law enforcement's conduct, Plaintiff class members were effectively barricaded in their classrooms and as such, were unable to take individual initiatives to free themselves and/or solicit outside assistance from family and/or community members who themselves were restrained and 'barricaded' by law enforcement at the school's perimeter. Such 'policy of barricade' immeasurably exacerbated the dangerousness under which class members were initially placed when confronting an active shooter on the school campus. Thus, class members were either trapped in the school and were not free to leave and/or were intentionally prevented from effectuating rescue by law enforcement at the school's perimeter. (Doc 15 Amended Complain ¶ 193.)

These allegations establish that Sherrif Nolasco and the other law enforcement defendants, knowingly placed the Plaintiffs. in danger. *Johnson,* 38 F.3d at 200. Their conduct went far beyond mere negligence. By failing to take action, Defendants locked in a madman with a gun with helpless and defenseless children, teachers and school staff. The above allegations described affirmative actions taken over the course of an hour by the Defendant Sheriff Nolasco, not "split-second judgments."

The Amended Complaint more than adequately alleges that Defendant Sheriff Nolasco had "culpable knowledge and conduct in affirmatively placing Plaintiffs in a position of danger." *Johnson*, 38 F.3d at 201. The facts set forth in the Amended Complaint describe exactly the

scenario envisioned by the state-created danger theory. Defendant Nolasco knowingly prolonged and exacerbated a dangerous environment, and over an hour, he "used [his] authority to create an opportunity that would not otherwise have existed for the third party's crime" to continue, even as Plaintiffs suffered. *Id*. at 201. This Court should reject their attempt to escape accountability for their actions.

## V. DEFENDAT SHERIFF NOLASCO CANNOT HIDE BEHIND QUALIFIED IMMUNITY

Defendant Sheriff Nolasco argues that he is entitled to qualified immunity on each of Plaintiffs' claims. But as Judge Willett of the Fifth Circuit recently noted, recent academic scholarship "paints the qualified-immunity doctrine as flawed—foundationally—from its inception," because "courts have been construing the wrong version of § 1983 for virtually its entire legal life." *Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (Willet, J., concurring). The original text of Section 1 of the Civil Rights Act of 1871 (known as § 1983) included a "Notwithstanding Clause" that "explicitly displaces common-law defenses"—including qualified immunity—by stating that "§ 1983 claims are viable notwithstanding 'any such law, statute, ordinance, regulation, custom, or usage of the State to contrary.'" *Id*. at 979-80.4 But "[f]or reasons lost to history, the critical 'Notwithstanding Clause' was inexplicably omitted from the first compilation of federal law in 1874." *Id*. at 980. Thus, "the Supreme Court's original justification for qualified immunity—that Congress wouldn't have abrogated common-law immunities absent explicit language—is faulty because the 1871 Civil Rights Act expressly included such language." Id. (emphasis in original).

The Supreme Court has explained that language of the statute as passed (known as a "Statutes at Large") is controlling, even if codified incorrectly or never codified at all. *See United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) (holding

10

that a statute inadvertently omitted from the United States Code remained valid law); *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) ("[T]he Code cannot prevail over the Statutes at Large when the two are inconsistent.") (cleaned up); *Stephan v. United States*, 319 U.S. 423, 426 (1943) (same). And any textual changes stemming from the codification of the federal laws in 1874 were not meant to alter the scope of the 1871 Civil Rights Act. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 203 n.15 (1970) (Brennan, J., concurring in part and dissenting in part); *Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 510 (1939). Qualified immunity does not exist, and Sheriff Nolasco cannot invoke it as a defense.

Assuming qualified immunity exists as a defense, it fails when (1) an official violated a constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *Scott v. Harris*, 550 U.S. 372, 377 (2007). A legal theory need not have been expressly adopted by the Fifth Circuit to put a defendant on notice that "every reasonable official would understand that what he is doing violates the law," and thus for the doctrine to be clearly established. *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011). The Fifth Circuit has recognized that such notice can be accomplished by pointing to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." Id. (cleaned up) (emphasis added). That test is squarely met here.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant Sheriff Nolasco's motion to dismiss. In the alternative, Plaintiffs respectfully request the opportunity to amend their Complaint.

| | |
|---|---|
| Dated:  July 27, 2023 | Respectfully Submitted, |
| | /s/Charles A. Bonner |
| | **CHARLES BONNER** |
| | **LAW OFFICES OF BONNER & BONNER** |
| | A. CABRAL BONNER, ESQ. |
| | 475 Gate Five Rd., Suite 211 |
| | Sausalito, Ca 94965 |
| | Tel: (415) 331-3070 |
| | |
| | **EVANS LAW OFFICE P.P.L.C.** |
| | JERRY EVANS |
| | 127 N. West Street |
| | Uvalde, Texas 78801 |
| | Tel: (830) 900-5021 |
| | e-mail: devanslawoffice@gmail.com |
| **THE BONNER LAW FIRM, P.C**. | **Legal Center of Jose Angel Gutierrez, P.C.** |
| VICTOR BONNER | JOSE ANGEL GUTIERREZ, JUDGE RET. |
| 4820 Old Spanish Trail | 429 W. 12th Street, |
| Houston, Texas 77021 | Dallas, Texas 75208 |
| Tel: (832) 433-6565 | Tel: (214)941-1900 |
| e-mail: vicbonneresq@gmail.com | e-mail: joseangelgutierrez@yahoo.com |

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on the 27th day of July, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court and caused to be served upon all counsel of record via the CM/ECF system, pursuant to the Federal Rules of Civil Procedure.

/s/Charles A. Bonner
CHARLES BONNER