UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **J.P., a minor by and through Guardian Ad Litem, CRYSTAL P. and DANIEL P., individually and on behalf of a class of all similarly situated students, et al** § § § § § | | |
| *Plaintiffs,* § | Civil Action No. 2:23-cv-15-AM | |
| § | | |
| **vs.** § | | |
| § | | |
| **The Uvalde Consolidated Independent School District ("UCISD"), et al** § § | | |
| *Defendants.* § | | |

## DEFENDANT PEDRO "PETE" ARREDONDO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendant Pedro "Pete" Arredondo, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this Motion to Dismiss the claims brought against him in Plaintiffs' First Amended Complaint. In support thereof, Arredondo respectfully shows as follows: [1]

### SUMMARY

Defendant Arredondo is entitled to dismissal of Plaintiffs' federal claims. First, Plaintiffs lack standing individually as parents to present claims under 42 U.S.C. § 1983. Second, Plaintiffs fail to allege facts that are sufficient to state a claim for relief regarding Arredondo. Specifically, Plaintiffs' claims against Arredondo for a Fourteenth Amendment unlawful seizure fail on their face since any seizure was created by the shooter as opposed to any police presence. Plaintiffs' Fourteenth Amendment substantive due process claim is based upon legal theories—state-created

---

[1] Pursuant to Federal Rule of Civil Procedure 12(a)(4), Chief Arredondo is not required to file an answer until fourteen (14) days after the Court rules on a motion filed pursuant to Rule 12. *See also Robin v. City of Frisco*, No. 4:16-cv-576, 2017 WL 2986315, *1 (E.D. Tex. Jul. 13, 2017). This extension applies regardless of whether the motion relates to some or all of the claims alleged in Plaintiffs' complaint. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1346 (3d ed. 2006).

danger and special relationship—that have been soundly rejected by the Fifth Circuit. Consequently, Arredondo is entitled to qualified immunity since rejected legal theories cannot be clearly established law.

## BACKGROUND

### A. Plaintiffs' Allegations.

Plaintiffs allege that "[o]n route to Robb Elementary, on or about 11:28 a.m., [the Shooter],[2] who apparently did not know how to drive, lost control of the truck which landed in a canal ditch. As the crash occurred in the vicinity of the Hillcrest Memorial Funeral Home, two employees walked over to be of assistance. Ascending from the crash, [the Shooter] began shooting at the two Hillcrest employees who fled for their lives back to the funeral home." ECF Doc. 15 at ¶84.

"[T]he Uvalde Police Department dispatched the initial 911 report from the funeral home. Commander of Uvalde Police Dept. SWAT team, Sgt. Eduardo Canales ("Sgt. Canales") and Uvalde Police acting Chief Mariano Pargas set off to Robb Elementary. Upon arrival, said officer met UPD officers Javier Martinez and Louis Landry who were also on the scene. Sgt. Canales saw [the Shooter] shooting his AR-15." ECF Doc. 15 at ¶91. "At 11:33 a.m., Uvalde Police officers observed [the Shooter] carrying a rifle outside the school's west hall entryway. The officer asked his supervisor, Sgt. Daniel Coronado, for permission to shoot the suspect. In waiting for a response, it was too late as [the Shooter] had already moved out from his site…." *Id*.

"Although [the Shooter] entered the west door, the exterior doors on both the east and south sides of the building were also unlocked such that [the Shooter] had unfettered access to the building's interior." ECF Doc. 15 at ¶95. "Once inside the west building, [the Shooter] walked down the hallway

---

[2] Salvador Ramos is referred to herein as the "Shooter."

and stopped in front of Rooms 111 and 112. At approximately 11:33 a.m., [the Shooter] fired his AR-15 rifle towards Rooms 111 and 112. Thereafter, [the Shooter] entered the door to Room 111 which, as was the case on prior occasions and which the school administration had been duly apprised, was extremely difficult to lock and as such, was unfortunately unlocked and unsecured." *Id*. at ¶96.

Plaintiffs allege the Shooter began his shooting. "In less than three minutes after the shooting began, Defendants Canales, Martinez, Landry, and Acting Chief Pargas of the UPD approached Rooms 111 and 112. The officers, outfitted with body armor, two rifles and three pistols, took up positions near the classrooms. They heard the shots being fired in the classrooms, as well as shots erupting through the walls." ECF Doc. 15 at ¶99. "Several of those bullets that had careened through the walls and entered Room 109…." *Id*. at ¶100. In fact, Plaintiffs allege that a teacher, Eva Mireles, from Room 109 was struck and killed by one of the Shooter's bullets that passed through the walls of the school. *Id*. at n.6.

"Soon thereafter, Uvalde CISD Police Chief Arredondo arrived having left his office at Uvalde High School." ECF Doc. 15 at ¶94. "After the two-and-a-half minute shooting spree with sporadic gun shots thereafter, Chief Arredondo, at approximately 11:36 a.m., along with Uvalde PD Sergeant Coronado, Officer Page, and Gonzalez entered the south side of the building." *Id*. at ¶102. Then, the Shooter began shooting at the officers.

"After [the Shooter] fired upon the officers positioned outside of Room 111 and 112, Chief Arredondo gave the order to those of his command nearby to stand down and not to engage [the Shooter]." ECF Doc. 15 at ¶105. "Chief Arredondo considered whether there were any students in Room 110… the strategy was to rescue the children in the adjacent classrooms…." *Id*. at ¶106.

"Chief Arredondo used his cellphone to call Uvalde PD's dispatch." ECF Doc. 15 at ¶109. "Arredondo called police dispatch seeking additional officers to participate in the barricade. He said 'he's [the Shooter] in one room. I need a lot of fire power, so I need this building surrounded. I need it

surrounded by as many AR-15s as possible.'" *Id*. "Uvalde Police Sgt. Coronado exited the building to make a call to dispatch … requesting ballistic shields, flashbang grenades and helicopter support." *Id*. at ¶110. "Sgt. Coronado remained outside the building for approximately 30 minutes while students and teachers were being evacuated through punched-out windows on the west side of the building." *Id*. In fact, people were "helping to evacuate other students across campus." *Id*. at ¶112.

"During the entirety of this time, Chief Arredondo remained inside the building…." ECF Doc. 15 at ¶113. Chief Arredondo was "unaware that the U.S. Border Patrol Tactical Unit ("BORTAC") were assembling and operating at the opposite side of the building…." *Id*. "Acting Chief Pargas acknowledged that he was never in communication with Chief Arredondo…." *Id*. at ¶116. "Chief Arredondo determinatively sought a master key … [and] stressed that before any attempt to enter the classroom could occur, he needed a master key and breaching tools." *Id*. at ¶115.

However, Chief Arredondo was unaware that at the north end of the building ballistic shields had arrived and "BORTAC had assumed operational control at approximately 12:20 p.m." ECF Doc. 15 at ¶127. BORTAC did the same things as Chief Arredondo. BORTAC sought a master key and waited for the surrounding rooms to be cleared of children and teachers: "In taking control of the situation, Commander Guerrero determined that the use of the Halligan breaching tool would not work fast enough such that his officers would face a heightened risk of gunfire. Similarly, in acquiring and testing a master key on an adjacent classroom door, Cdr. Guerrero determined that the master key that he received from the school did not work. Although there was reasonable doubt as to whether the door to Room 111 was locked, Cdr. Guerrero obtained a second master key which he determined had worked." *Id*. at ¶130.

### B. Plaintiffs' Causes of Action.

Plaintiffs assert claims against Arredondo in his individual and official capacities. ECF Doc. 15 at ¶45.[3] Specifically, Plaintiffs allege a claim under 42 U.S.C. §1983 for alleged violations of Plaintiffs' substantive due process rights under the Fourteenth Amendment. *Id.* at ¶¶178–198. Plaintiffs purport to assert this claim against Arredondo under the Fourteenth Amendment for a "state-created danger" and "special relationship." *Id.* at ¶¶181, 195–198. Plaintiffs seek recovery from Arredondo for compensatory damages; punitive damages; reasonable attorneys' fees; and costs. *Id.* at Prayer, ¶¶(d)–(h).

## ARGUMENT AND AUTHORITIES

### A. The Standard for a Motion to Dismiss.

#### 1. Federal Rule of Civil Procedure 12(b)(1).

A court must dismiss a claim for which it lacks jurisdiction. FED. R. CIV. P. 12(b)(1). A claim should be dismissed for lack of subject-matter jurisdiction "when the court does not have statutory or constitutional power to adjudicate the case." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the Rule 12(b)(1) challenge should be first considered. *Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)). The party asserting jurisdiction bears the burden of proof for a motion under Rule 12(b)(1). *Ramming*, 281 F.3d at 161.

#### 2. Federal Rule of Civil Procedure 12(b)(6).

To survive a FED. R. CIV. P. 12(b)(6) motion to dismiss, Plaintiffs must plead "enough facts

---

[3] Plaintiffs also assert a "Class/Mass Action" on behalf of Does 1 through 3,000. However, Plaintiffs have not moved to certify the class under Rule 23 or the Local Rules of the Western District of Texas. Before entertaining class certification, the Court should resolve the question of each individual Defendant's qualified immunity. *See Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022).

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A formulaic recitation of the elements of a cause of action will not suffice. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), the court does not, "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)).

The Court need only accept as true the "well pleaded" facts in a complaint; to be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions and unwarranted factual deductions. *Tuchman v. DSC Comms. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990). A court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). A conclusory allegation is one which lacks factual support. *E.g.*, *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 911 (5th Cir. 2019). The Court should dismiss a complaint if it lacks an allegation regarding an element of a cause of action. *Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

### 3. The Plaintiffs' Burden to Defeat Qualified Immunity.

"Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised." *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). Qualified immunity "adds a wrinkle" to §1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020). "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is

liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id*. (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). To defeat qualified immunity, a plaintiff must show: (1) that the official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Morgan*, 659 F.3d at 371; *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Courts have discretion in deciding which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### B. Plaintiffs' Official Capacity Claims Against Arredondo Should be Dismissed as Redundant.

Suing a governmental official in his official capacity is merely another way of pleading an action against the entity of which that officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Courts dismiss redundant claims when they are asserted against both an individual in his or her official capacity and the entity for which the official works. *E.g., Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (upholding the dismissal of claims against officers in their official capacity which were duplicative of the claims against the governmental entities); *Eltalawy v. Lubbock Indep. Sch. Dist.*, 816 Fed. App'x 958, 962-63 (5th Cir. 2020) (dismissing official capacity claims against a school employee as redundant to claims against the school district, citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).[4] Plaintiffs assert claims under §1983 against both UCISD and Arredondo in his official capacity. ECF Doc. 15 at ¶45. The Court should dismiss the official-capacity claims against Arredondo because they are redundant of Plaintiffs' claims against UCISD.

---

[4] *See also, e.g.*, *Clark v. LaMarque Indep. Sch. Dist.*, 54 Fed. App'x 412 (5th Cir. 2002); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996) (dismissing claims against county judge in his official capacity as redundant of claims against the county).

## C. The Court Lacks Jurisdiction Over the Parents' Individual Claims Because They Lack Standing.

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Accordingly, "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

To establish standing under Article III, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "The injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Parents lack standing to bring individual claims under §1983 based upon alleged deprivations of a child's constitutional rights. *Martinez v. Maverick County*, 507 Fed. App'x 446, 448 n.1 (5th Cir. 2013) (family members of the injured plaintiff "failed to establish standing by not putting forth facts implicating a right of recovery separate from the alleged violations of [the injured plaintiff's] personal rights") (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986)). Accordingly, the named Plaintiff parents lack standing to bring individual claims.

Similarly, individuals who were not injured lack standing to bring claims based on the injury to another. *Gregory v. McKennon*, 430 Fed. App'x 306, 310 (5th Cir. 2011) (plaintiff lacked

standing to pursue a §1983 claim based on violations of others' rights, citing *Lujan,* 504 U.S. at 560 n.1 for the proposition that a plaintiff lacks Article III standing where the alleged injury does not affect the plaintiff in a personal and individual way); *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) ( "A third party may not assert a civil rights claim based on the civil rights violations of another individual."); *Covarrubias v. Wallace*, 907 F. Supp. 2d 808, 813 (E.D. Tex. 2012) (plaintiff "cannot raise claims regarding alleged violations of other persons' rights).

Plaintiffs also cannot satisfy the second element of standing because they have not plausibly alleged that their injuries were fairly traceable to the challenged action of Arredondo. The injuries they suffered were fairly traceable to the Shooter, who was taking actions which were intended to harm Plaintiffs, and not fairly traceable to a Defendant, such as Arredondo, whose actions in rushing to the scene were part of an effort to neutralize the Shooter and prevent further harm by the Shooter. Plaintiffs are apparently trying to attach liability to Arredondo for his failure to prevent their injuries, but not because he took any actions that were intended to harm any of the Plaintiffs. The Shooter was the only person Arredondo and the other law enforcement officers wanted to harm that day; all others they were trying to protect. Even if the Plaintiffs claim that Arredondo was negligent in his efforts to harm the Shooter and to protect all others, such a claim would only sound in negligence and not give rise to a Fourth or Fourteenth Amendment civil rights claim against Arredondo. There are simply no plausibly allegations that Arredondo's actions were of the sort to give rise to a Constitutional claim, which requires a subjective intent to harm the Plaintiffs. Plaintiffs' claims against Arredondo should be dismissed.

### D. Plaintiffs' State-Created Danger and Special-Relationship Claims are Not Recognized in the Fifth Circuit and, Therefore, are Not Clearly Established Law Defeating Qualified Immunity.

Plaintiffs' factual allegations fail to satisfy the pleading standard necessary to defeat Arredondo's qualified immunity. To defeat qualified immunity, a plaintiff must show: (1) that the

official violated a statutory or constitutional right; and (2) that the right was clearly established at the time of the challenged conduct, in the specific context of the case. *Scott*, 550 U.S. at 377. Under the second prong, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam).

A right is deemed to be clearly established when "the contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Wernecke v. Garcia,* 591 F.3d 386, 392 (5th Cir. 2009). This Court has clarified that the plaintiff must "point to controlling authority--or a robust consensus of persuasive authority that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371-72 (5th Cir. 2011) (internal citations omitted); *see also Vann v. City of Southaven, Miss.,* 884 F.3d 307, 310 (5th Cir. 2018) ("It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'") (quoting *Cass v. City of Abilene,* 814 F.3d 721, 732-33 (5th Cir. 2016)); *Perniciaro v. Lea,* 901 F.3d 241, 256 (5th Cir. 2018) ("general propositions of law defined at high levels of generality are insufficient to define clearly established law for purposes of defeating qualified immunity") (internal citations omitted).

The Fifth Circuit has recognized that schoolchildren have a liberty interest in their bodily integrity which is protected by the Due Process Clause. *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 688 (5th Cir. 2017) (citing *Doe v. Covington County Sch. Dist.*, 675 F.3d 849, 853 n.2 (5th Cir. 2012) (en banc)); *see DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). But the "failure to protect an individual against private violence simply does

not constitute a violation of the Due Process Clause," unless the state has created "a 'special relationship' with a particular citizen, requiring the state to protect him from harm." *Covington*, 675 F.3d at 855–56 (quoting *Deshaney*, 498 U.S. at 199-200). Plaintiffs' allegations and legal theories are insufficient to defeat Arredondo's entitlement to qualified immunity.

### 1. The State-Created Danger Theory is Not Clearly Established Law.

Plaintiffs point to the state-created danger and special-relationship theories because this case involves a criminal act by a private party who was trespassing on school property. Plaintiffs attempt to pierce Arredondo's qualified immunity through these theories. The problem for Plaintiffs is that "the Fifth Circuit has never recognized th[e] 'state-created-danger' exception." *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020). In fact, the Fifth Circuit has repeatedly declined to recognize the state-created danger theory of liability. *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020); *see also, e.g., Shumpert v. City of Tupelo*, 905 F.3d 310, 324 n.60 (5th Cir. 2018) ("[T]he theory of state-created danger is not clearly established law." (listing cases)); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the 'state-created danger' theory of liability."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("But this circuit has not adopted the state-created danger theory."); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."). Consequently, Plaintiff have not demonstrated a clearly established substantive due process right on the facts they allege. *See Keller*, 952 F.3d at 227. As the Fifth Circuit has made plainly clear, "[a] never-established right cannot be a clearly established one." *Fisher v. Moore*, 62 F.4th 912, 919 (5th Cir. 2023). Therefore, Plaintiffs' claims against Arredondo should be dismissed.

Furthermore, Under the state-created danger theory, a state actor may be liable under § 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation. *Covington,* 675 F.3d at 854-55.

### 2. The Fifth Circuit has Rejected the Special-Relationship Theory in the Public School Context.

With regard to the special-relationship theory, the Fifth Circuit has emphatically and categorically rejected the special-relationship theory in the public-school context. *See Covington*, 675 F.3d at 857 ("We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors."); *see also Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 522, 529 (5th Cir. 1994) (finding no special relationship between a high school and a student fatally wounded by a gunshot fired in the school parking lot after a school dance); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 199, 202-03 (5th Cir. 1994) (finding no special relationship between a high school and a student shot and killed in the school hallway during the school day by a boy who was not a student but had gained access to the school); *Doe v. San Antonio Indep. Sch. Dist.*, 197 Fed. Appx. 296, 298-301 (5th Cir. 2006); *Teague v. Tex. City Indep. Sch. Dist.*, 185 Fed. Appx. 355, 357 (5th Cir. 2006). Accordingly, Plaintiffs' claims cannot rest on the special-relationship theory, as it has been categorically rejected and, thus, cannot defeat Arredondo's entitlement to qualified immunity. *See Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022).

### E. Plaintiffs' Claim for Unlawful Seizure Against Arredondo Fails as a Matter of Law.

Furthermore, Arredondo did not violate the students' and staff members' constitutional rights. "A seizure requires the use of force *with an intent to restrain*. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy the rule." *Id.* at 998

(emphasis in original) (citation omitted). "[T]he appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain…." *Id.* (emphasis in original). "Nor does the seizure depend on the subjective perceptions of the seized person." *Id.* at 999.

In determining whether an officer makes a sufficient show of authority, the court considers whether, in the light of 'all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Wright*, 57 F.4th 524, *11 (5th Cir. 2023) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, (1980)). "When a person 'has no desire to leave for reasons **unrelated to the police presence**, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter'" *Id.* (quoting *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021)). Arredondo made no show of authority to the staff members, teachers, and students in the classrooms. It was the Shooter, not Arredondo, who was restricting their movements. Plaintiffs were not aware of any coercive effect that Arredondo could have had on them. Additionally, Plaintiffs' allegations and arguments about "Defendants" generally, and not Arredondo specifically, are insufficient to state a claim against Arredondo under §1983 because individual liability under §1983 requires a showing of individual causation. *E.g.*, *Martinez v. City of N. Richland Hills*, 846 Fed. App'x 238, 243-44 (5th Cir. 2021); *Jones v. Hosemann*, 812 Fed. App'x 235, 239 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."). Consequently, there was no seizure by Arredondo.

### F. Plaintiffs' "What If" Complaints Against Arredondo Fail as a Matter of Law.

Arredondo had no control over Plaintiffs' "what if" complaints. Plaintiffs assert that it was Arredondo's fault that the perimeter fences were "significantly low and breachable." ECF Doc. 15

at ¶184. Likewise, Plaintiffs blame Arredondo (who was in his office at the high school when the shooting started) for failing to keep the doors locked at Robb Elementary. *Id*. Plaintiffs further blame Arredondo for his failure "to rectify the consistently unreliable internet service on campus which inhibited the school's Raptor alter system." *Id*. These arguments create an immediate causation problem for Plaintiffs' claims since there is no guarantee that a shooter armed with an AR-15 rifle would have been stopped by any such contingency. The Shooter is the one to blame for this tragedy.

More fundamentally, Arredondo was neither legally nor actually able to correct any of these "What Ifs." In Texas, the board of trustees, not an ISD Police Chief or other official, is a school district's policymaker. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school district…rests with the district's board of trustees."); TEX. EDUC. CODE §11.151. Plaintiffs allege the conditions above as evidence of Arredondo's deliberate indifference. ECF Doc. 15 at ¶181. But these conditions were beyond Arredondo's control—the board of trustees controlled these conditions.

A state-created danger theory would require "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff." *Covington*, 675 F.3d at 865 (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537–38 (5th Cir. 2003) (alterations in original)). Plaintiffs bear the burden of establishing deliberate indifference, a stringent standard denoting a high degree of culpability. *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Arredondo's actions were not deliberately indifferent.

Plaintiffs acknowledge that Arredondo (and the other law enforcement officers who were

outside his command, including "91" DPS Trooper) were responding to an aggravated assault with a deadly weapon in a school. ECF Doc. 15 at ¶¶95–97. Plaintiffs further acknowledge that the Shooter was using a high-powered assault rifle. *Id*. Furthermore, the Shooter had barricaded himself in Rooms 111 and 112 effectively holding students and teachers hostage. *Id*. When law enforcement officers approached to breach the classrooms, the Shooter fired, and his rounds breached the walls of surrounding classrooms. *Id*. at ¶101.

"Chief Arredondo used his cellphone to call Uvalde PD's dispatch." ECF Doc. 15 at ¶109. "Arredondo called police dispatch seeking additional officers to participate in the barricade. He said 'he's [the Shooter] in one room. I need a lot of fire power, so I need this building surrounded. I need it surrounded by as many AR-15s as possible.'" *Id*. Arredondo considered whether children were in surrounding classrooms and moved to evacuate those students. *Id*. at ¶106. "During the entirety of this time, Chief Arredondo remained inside the building…." *Id*. at ¶113. Chief Arredondo was "unaware that the U.S. Border Patrol Tactical Unit ("BORTAC") were assembling and operating at the opposite side of the building…." *Id*. "Acting Chief Pargas acknowledged that he was never in communication with Chief Arredondo…." *Id*. at ¶116. "Chief Arredondo determinatively sought a master key … [and] stressed that before any attempt to enter the classroom could occur, he needed a master key and breaching tools." *Id*. at ¶115. Arredondo took action.

However, Chief Arredondo was unaware that at the north end of the building ballistic shields had arrived and "BORTAC had assumed operational control at approximately 12:20 p.m." ECF Doc. 15 at ¶127. BORTAC did the same things as Chief Arredondo. BORTAC sought a master key and waited for the surrounding rooms to be cleared of children and teachers: "In taking control of the situation, Commander Guerrero determined that the use of the Halligan breaching tool would not work fast enough such that his officers would face a heightened risk of gunfire. Similarly, in acquiring and testing a master key on an adjacent classroom door, Cdr. Guerrero determined that the master key that

he received from the school did not work. Although there was reasonable doubt as to whether the door to Room 111 was locked, Cdr. Guerrero obtained a second master key which he determined had worked." *Id*. at ¶130. Plaintiffs fail to show that Arredondo acted with deliberate indifference.

### G. The Court Should Dismiss Plaintiffs' Claim for Punitive Damages.

To obtain punitive damages in connection with their §1983 claims, Plaintiffs must establish that Arredondo violated the Plaintiffs' constitutional rights and that Arredondo acted with reckless or callous indifference to the Plaintiffs' federally protected rights or was motivated by evil intent. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017). Plaintiffs must demonstrate that Arredondo acted with subjective recklessness or callous indifference. *Kohler v. Johnson*, 396 Fed. App'x 158, 162 (5th Cir. 2010) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)); *Williams*, 352 F.3d at 1015. This is a difficult standard to meet.[5]

Plaintiffs have not offered well-pled allegations to show that Arredondo violated the Plaintiffs' constitutional rights. Additionally, Arredondo's alleged conduct does not demonstrate evil motive or intent and does not rise to the level of reckless or callous indifference to Plaintiffs' Constitutional rights. Plaintiffs acknowledge that Arredondo (and the other law enforcement officers) were responding to an aggravated assault with a deadly weapon in a school. Plaintiffs' allegations amount, at most, to nothing more than allegations of negligent conduct. Accordingly, the Court should dismiss Plaintiffs' claim for punitive damages against Arredondo.

### H.     The Court Must Stay Discovery

While a defendant's assertion of immunity is pending, courts cannot allow **any** discovery

---

[5] For example, a plaintiff established defendants' subjective recklessness and callous indifference by showing that the defendants knowingly perpetuated an unconstitutional prison policy in violation of a court order. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994).

to take place. *Carswell v. Camp*, 54 F. 4th 307, 311 (5th Cir. 2022); *Iqbal*, 556 U.S. at 684-686 (recognizing "serious and legitimate reasons" for the basic thrust of qualified immunity—to free government officials from the concerns of litigation, including disruptive discovery, and noting that permitting discovery to proceed as to other defendants would prejudice defendants who have asserted qualified immunity); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) for the proposition that discovery should not be allowed until the threshold question of qualified immunity is resolved); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.").[6] The Court may not allow any discovery to take place until Arredondo's assertion of immunity is resolved.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Pedro "Pete" Arredondo prays that the Court the grant this motion to dismiss Plaintiffs' claims against him for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1) and for failure to state claims upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6), that the Court recognize that Arredondo is entitled to qualified immunity from Plaintiffs' claims, and that all of Plaintiffs' causes of action against Defendant Arredondo be dismissed, with prejudice to the refiling of same. Defendant further prays that Plaintiffs take nothing by this suit; that all relief requested by Plaintiffs be denied; and that Defendant recover all costs of suit; as well as for such other and

---

[6] *See also, e.g., Jackson v. City of Hearne*, 959 F.3d 194, 202 (5th Cir. 2020); *Vander Zee v. Reno*, 73 F.3d 1365, 1368-69 (5th Cir. 1996); *Allen v. Hays*, 812 Fed. App'x 185, 194 (5th Cir. 2020); *Morris v. Cross*, 476 Fed. App'x 783, 785 (5th Cir. 2012) ("Because the defendants raised qualified immunity, [plaintiff] was not entitled to proceed with discovery.")

further relief, both general and special, at law or in equity, to which Defendant may show himself to be justly entitled.

                                          Respectfully submitted,

                                       /s/ *Thomas P. Brandt*
                                       **THOMAS P. BRANDT**
                                           State Bar No. 02883500
                                       **LAURA O'LEARY**
                                           State Bar No. 24072262
                                       **CHRISTOPHER D. LIVINGSTON**
                                           State Bar No. 24007559

                                       **FANNING HARPER MARTINSON BRANDT & KUTCHIN, P.C.**
                                       A Professional Corporation
                                       One Glen Lakes
                                       8140 Walnut Hill Lane, Suite 200
                                       Dallas, Texas 75231
                                       (214) 369-1300 (office)
                                       (214) 987-9649 (telecopier)
                                       tbrandt@fhmbk.com
                                       loleary@fhmbk.com
                                       clivingston@fhmbk.com

                                       **ATTORNEYS FOR DEFENDANT PEDRO "PETE" ARREDONDO**

## CERTIFICATE OF SERVICE

     I hereby certify that on the 1st day of December 2023, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys of record.

                                        /s/ *Christopher D. Livingston*
                                        **CHRISTOPHER D. LIVINGSTON**